UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| RONALD A. BLANKENSHIP, et al., ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 06-CV-2159 |
| ) | |
| BRIDGESTONE AMERICAS HOLDING, ) | |
| INC., individually and its subsidiaries and/or ) | |
| predecessors Bridgestone Firestone North ) | |
| American Tire, LLC, Bridgestone/Firestone, ) | |
| Inc., and The Firestone Tire & Rubber ) | |
| Company, a Nevada corporation, et al., ) | |
| ) | |
| **Defendants.** ) | |

## OPINION

This case is before the court for ruling on the Motion to Remand Case to the Circuit Court of Macon County, Illinois (#29) filed by Plaintiffs, Ronald A. Blankenship, Lori Blankenship, Ronald R. Tarter, Sharon Tarter, Gerald A. McMurray, Michael Edward Jones, Judith Elaine Jones, Harold E. Murrow, Cleda A. Murrow, Gene R. Andrighetti, Alyce Andrighetti, Jo Ann Durbin, as personal representative of the estate of Wayne Durbin, deceased, Gene E. Davis, Roger Brent Stirrett, as personal representative of the estate of Roger J. Stirrett, deceased, Linda L. Wood, as personal representative of the estate of Noel Evans, deceased, Michael J. Drnjevic, and Cheryl Drnjevic. This court has carefully considered Plaintiffs' Motion, Plaintiffs' Memorandum of Law in Support (#30), and the Memorandum in Opposition to Motion to Remand (#51) filed by Defendants Bridgestone Americas Holding, Inc., Bridgestone Firestone North American Tire, LLC, Bridgestone/Firestone, Inc., and The Firestone Tire & Rubber Company (Firestone Defendants). Following this court's careful and thorough consideration of the issues raised and the documents provided, Plaintiffs' Motion to Remand Case to the Circuit Court of Macon County, Illinois (#29)

is GRANTED.

## FACTS

On July 20, 2006, Plaintiffs filed a 44-count Complaint at Law in the circuit court of Macon County (Case No. 2006-L-111) against the Firestone Defendants, Ashland, Inc., Shell Canada, Ltd., Shell Oil Company, Barton Solvents, Inc., Chemcentral Corporation, Chemcentral Ohio Valley Corporation, Chevron U.S.A., Inc., ConocoPhillips Company, Drake Petroleum Company, Fisher Scientific Company, Texaco Inc., Huntsman Petrochemical Corporation, and Kerr-McGee Refining Corporation. In their Complaint, Plaintiffs alleged that Plaintiffs Ronald Blankenship, Ronald Tarter, Gerald McMurray, Michael Jones, Harold Murrow, Gene Andrighetti, Wayne Durbin, Gene E. Davis, Roger J. Stirrett, Noel Evans and Michael Drnjevic formerly worked for the Firestone Defendants at the Firestone facilities in Bloomington and Decatur, Illinois. Three of these employees, Wayne Durbin, Roger Stirrett and Noel Evans, have died and are represented by personal representatives of their estates. Plaintiffs Lori Blankenship, Sharon Tarter, Judith Jones, Cleda Murrow, Alyce Andrighetti, and Cheryl Drnjevic are each married to one of the Plaintiff employees. According to the Complaint, Defendants Ashland, Inc., Shell Canada, Ltd., Shell Oil Company, Barton Solvents, Inc., Chemcentral Corporation, Chemcentral Ohio Valley Corporation, Chevron U.S.A. Inc., ConocoPhillips Company, Drake Petroleum Company, Fisher Scientific Company, Texaco Inc., Huntsman Petrochemical Corporation, and Kerr-McGee Refining Corporation sold various solvents to the Firestone Defendants. Plaintiffs alleged that the Plaintiff employees were exposed to benzene and benzene containing solvents provided by these Defendants to the Firestone Defendants. Plaintiffs alleged that this exposure resulted in severe injuries to the Plaintiff employees.

In Counts I, II, and III of their Complaint, against the Firestone Defendants, Plaintiffs alleged fraudulent concealment, intentional misrepresentation, and battery. Plaintiffs alleged that the Firestone Defendants knew that benzene was dangerous and fraudulently concealed information regarding the danger or intentionally misrepresented the existence and nature of the hazards associated with benzene to the Plaintiff employees. Plaintiffs alleged that the Firestone Defendants committed battery by exposing the Plaintiff employees to benzene. Plaintiffs alleged that, as a result, they suffered personal injury and disability. Counts IV through XLII alleged negligence, breach of implied warranty and strict liability against the remaining Defendants, respectively. In Count XLIII, against all Defendants, Plaintiffs Durbin, Stirrett, and Woods alleged a survival action. In Count XLIV, against all Defendants, the Plaintiff wives alleged loss of consortium.

On August 24, 2006, the Firestone Defendants filed a Notice of Removal (#1) in this court. All Defendants consented to removal. The Firestone Defendants alleged that this court has jurisdiction over the claims in this case based on the doctrine of complete preemption. Specifically, the Firestone Defendants contended that Plaintiffs' claims implicate certain collective bargaining agreements between Firestone and the union that represented the Plaintiff employees. The Firestone Defendants argued that, under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), federal district courts exercise exclusive jurisdiction over disputes involving collective bargaining agreements. The Firestone Defendants noted that, where resolution of a state law claim depends on the interpretation of a collective bargaining agreement, that claim is preempted by the "complete preemption doctrine" under section 301. The Firestone Defendants argued that Plaintiffs' claims necessarily require the interpretation and application of the terms of the collective bargaining agreement and are preempted, relying on Medlen v. Estates of Myers, 2005

3

WL 3307313, at *2-3 (N.D. Ohio 2005), and Dixon v. Borgwarner Diversified Transmission Prods., Inc., 2004 WL 801270, at *4 (S.D. Ind. 2004). Alternatively, the Firestone Defendants contended that federal jurisdiction is proper and necessary based on the federal questions and interests involved in determining whether the Firestone Defendants breached the collective bargaining agreements, citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312-13 (2005) and Bennett v. Southwest Airlines Co., 2006 WL 1987821, at *2 (N.D. Ill. 2006).

On September 7, 2006, Plaintiffs filed a Motion to Remand Case to the Circuit Court of Macon County, Illinois (#29) and a Memorandum of Law in Support (#30). Plaintiffs argued that their claims are wholly independent of any collective bargaining agreements. They contended that, accordingly, the LMRA does not completely preempt those claims, and no substantial federal question exists to provide federal jurisdiction. Plaintiffs noted that they pled no federal claims in their Complaint, nor did they expressly refer to the collective bargaining agreements on which the Firestone Defendants rely to support federal jurisdiction. Plaintiffs stated that they certainly alleged no claim for breach of the collective bargaining agreements. Plaintiffs argued that no federal subject matter jurisdiction exists, and the case must therefore be remanded to the circuit court of Macon County. Plaintiffs also requested that this court award them the costs and expenses they have incurred in seeking remand.

On September 21, 2006, the Firestone Defendants filed their Memorandum in Opposition to Plaintiffs' Motion to Remand (#51) and supporting exhibits (#53). The Firestone Defendants insist that this court has jurisdiction and, therefore, the case was properly removed to this court.

## ANALYSIS

"[R]emoval is proper over any action that could have been filed originally in federal court."

Tylka v. Gerber Prods. Co., 211 F.3d 445, 448 (7th Cir. 2000); Orbitz, LLC v. Worldspan, L.P., 425 F. Supp. 2d 929, 931 (N.D. Ill 2006). "The party seeking removal has the burden of establishing the jurisdiction of the district court." In re Application of County Collector of County of Winnebago, Ill., 96 F.3d 890, 895 (7th Cir. 1996); see also Samuel Trading, LLC v. Diversified Group, Inc., 420 F. Supp. 2d 885, 889 (N.D. Ill. 2006). The removal statute should be construed narrowly, and any doubts about jurisdiction should be resolved in favor of remand. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993); Orbitz, LLC, 425 F. Supp. 2d at 931. Where the basis of removal is federal question jurisdiction, the plaintiffs' cause of action must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; Orbitz, LLC, 425 F. Supp. 2d at 932.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). This rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. Caterpillar, 482 U.S. at 392. Under this rule, the plaintiff is the master of the claim and may avoid federal jurisdiction by exclusive reliance on state law. Caterpillar, 482 U.S. at 392. The doctrine of complete preemption, however, exists as an "independent corollary" to the well-pleaded complaint rule. Caterpillar, 482 U.S. at 393. Under this doctrine, "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." Caterpillar, 482 U.S. at 393, quoting Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S.1, 24 (1983).

As noted, the Firestone Defendants argue that this court has jurisdiction over this case based upon section 301 of the LMRA. Section 301 provides that "[s]uits for violation of contracts between

5

an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Claims implicating Section 301 are completely preempted. See, e.g., Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209-11 (1985). "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" Caterpillar, 482 U.S. at 394, quoting Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler, 481 U.S. 851, 859 n.3 (1987); see also Loewen Group Int'l, Inc. v. Haberichter, 65 F.3d 1417, 1421 (7th Cir. 1995). "[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles–necessarily uniform throughout the Nation–must be employed to resolve the dispute." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). However, the Supreme Court has stated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301" and "it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct or establish rights and obligations, independent of a labor contract." Allis-Chalmers Corp., 471 U.S. at 211-12.

The Firestone Defendants have argued that Plaintiffs' Complaint is preempted by § 301, stating as follows:

> [The collective bargaining agreements contain] extensive and detailed provisions that created, defined, and determined not only the

>employment relationship between plaintiffs and Firestone, but the rights and obligations of the parties concerning the identity, monitoring, and prevention of workplace occupational illnesses, including those plaintiffs claim they contracted while employed by Firestone. These specific [collective bargaining agreement] terms regarding occupational illnesses and the obligations, studies, and conclusions that flowed from them, make this a § 301 preemption case, and not a garden variety state tort law case as plaintiffs assert.

The Firestone Defendants state that the Complaint "repeatedly" refers to the union, the union-Firestone Joint Safety and Health Committee established by the 1963 collective bargaining agreement, the union-Firestone Joint Occupational Health Committee established through the 1970 collective bargaining agreement, the union-Firestone Joint Health and Safety Program established by the 1988 collective bargaining agreement, and the occupational health studies performed by the University of North Carolina under the direction of the union-Firestone Joint Occupational Health Committee. The Firestone Defendants refer to Paragraphs 80, 81, 82, and 86 of the Complaint.

This court has reviewed the paragraphs in the Complaint referred to by the Firestone Defendants. Those paragraphs are part of Plaintiffs' lengthy recitation of the basis of the Firestone Defendants' knowledge of the hazards of working with benzene. This court therefore agrees with Plaintiffs that "[i]t is clear from reading the complaint that the safety committee and the research study are mentioned only as facts demonstrating Firestone's knowledge of the dangers certain chemical products used in the rubber manufacturing process present to the human body." This court agrees that "[t]hese passages do not so much as allude to a collective bargaining agreement."

7

In any case, the starting point for determining whether the resolution of Plaintiffs' state law claims depends on the meaning of the collective bargaining agreements is an examination of the state law claims.  See Smith v. Colgate-Palmolive Co., 943 F.2d 764, 768 (7th Cir. 1991); Dixon, 2004 WL 801270, at *3; see also Loewen Group, 65 F.3d at 1422.  Here, following their lengthy recitation of the basis for the Firestone Defendants' knowledge of the dangers associated with benzene, Plaintiffs have alleged:

> Despite the above-mentioned knowledge (particularly the studies demonstrating that its own work force was developing cancer), from 1963 until the present, Bridgestone/Firestone, with specific intent to harm, continued to expose its workers at its Bloomington and Decatur, Illinois plants to benzene and solvents containing benzene *via* skin contact and inhalation knowing that plaintiff employees were not aware of the hazardous nature of the rubber solvents; never providing gloves, goggles, masks, or respiratory protection to workers at its Bloomington and Decatur, Illinois plants despite knowing that the plaintiff employees needed such protection against the cancer-causing properties of the rubber solvents; intentionally failing to warn of the carcinogenic hazards associated with benzene and solvents containing benzene so as to falsely reassure its plaintiff employees at its Bloomington and Decatur, Illinois plants that it was safe to continue producing tires despite knowing that the rubber solvents its plaintiff employees were

>using caused cancer; intentionally misleading its plaintiff employees at its Decatur, Illinois plant as to the contents of the various rubber solvents used at that facility and the hazards associated with those rubber solvents in that management changed the labels on 55-gallon drums by covering over or removing the technical names of the materials as well as the "skull and cross bones" insignia, all of which demonstrates an intentional and felonious poisoning, fraud, misrepresentation, and conspiracy to deceive the Bridgestone/Firestone Decatur and Bloomington employees as to the true nature of the work place.

Based upon these allegations, Plaintiffs alleged claims against the Firestone Defendants for fraudulent concealment, intentional misrepresentation, and battery. Plaintiffs claim that the Firestone Defendants concealed or misrepresented the hazardous nature of benzene and intentionally exposed the Plaintiff employees to hazardous rubber solvents.

To establish a claim for fraudulent concealment, Plaintiffs must prove that: (1) Defendants concealed a material fact under circumstances that created a duty to speak; (2) Defendants intended to induce a false belief; (3) Plaintiffs could not have discovered the truth through reasonable inquiry or inspection, or were prevented from making a reasonable inquiry or inspection, and justifiably relied upon Defendants' silence as a representation that the fact did not exist; (4) the concealed information was such that Plaintiffs would have acted differently had they been aware of it; and (5) Plaintiffs' reliance resulted in damages. See Bauer v. Giannis, 834 N.E.2d 952, 957-58 (Ill. App. Ct. 2005). The elements of fraudulent misrepresentation are: (1) a false statement of material fact;

(2) Defendants' knowledge or belief that the statement was false; (3) Defendants' intent that the statement induce the Plaintiffs to act; (4) Plaintiffs' justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement.  See Sassak v. City of Park Ridge, 431 F. Supp. 2d 810, 818 (N.D. Ill. 2006); Bauer, 834 N.E.2d at 957.  To establish a claim for battery, Plaintiffs must prove that: (1) Defendants acted with intent to cause a harmful or offensive contact with Plaintiffs, or to cause an imminent apprehension of such a contact, and (2) a harmful contact with Plaintiffs directly or indirectly resulted.  See Cohen v. Smith, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995), citing Restatement (Second) of Torts, § 13 (1965).  Plaintiffs argue that resolution of these state law claims in no way requires resort to a collective bargaining agreement.  They contend that, rather, adjudication of the issues raised by Plaintiffs' Complaint turns on precisely the sort of "purely factual" issues present in cases where courts have refused to find preemption, citing Lingle, 486 U.S. at 407, Bettis v. Oscar Mayer Foods Corp., 878 F.2d 192, 197 (7th Cir. 1989), and Evans v. Keystone Consol. Indus. Inc., 884 F. Supp. 1209, 1217 (C. D. Ill. 1995).

     As noted, the Firestone Defendants argue that these claims are founded directly on rights created by the collective bargaining agreements and are therefore preempted by § 301.  The Firestone Defendants contend that Plaintiffs' allegations "are allegations of unsafe working conditions, pure and simple, that were directly addressed and governed by the terms of the [collective bargaining agreements] between the plaintiffs' union and Firestone."  In support of their premise that the collective bargaining agreements created, defined, and determined the rights and obligations of the parties with regard to workplace occupational illnesses, the Firestone Defendants begin by referring to the 1963 agreement which established a safety committee composed of up to three members designated by the union and an equal number of members designated by Firestone.

This provision was carried forward in each successive collective bargaining agreement. The Firestone Defendants also pointed out that, in the 1963 agreement, Firestone contracted to provide reasonable protective devices, equipment, and clothing for work which is recognized to be abnormally hazardous. This provision also appears with slight modifications throughout the years in each successive version of the collective bargaining agreement.

The Firestone Defendants also point out that the 1970 collective bargaining agreement established the Joint Occupational Health Program, which was amended and extended in the 1977 and 1979 collective bargaining agreements. The Firestone Defendants note that the program was essentially abolished in the 1988 collective bargaining agreement, which stated that "adequate studies have been undertaken which identify the need for the establishment of further health and safety programs." The 1988 collective bargaining agreement established a URW/Firestone Health and Safety Program to supplement the collective bargaining agreement's Safety and Health Program. The Firestone Defendants therefore contend that all of the collective bargaining agreements contain provisions addressing safe working conditions and establishing the remedies and procedures relating to them.

The Firestone Defendants refer specifically to Articles XI and XII of the 1970 collective bargaining agreement, stating that the provisions of the 1970 collective bargaining agreement are representative of all the collective bargaining agreements. The Firestone Defendants also refer to the Memorandum of Agreement for a Joint Occupational Health Program that is also part of the 1970 collective bargaining agreement. This court has carefully reviewed these articles and the Memorandum of Agreement. Article XI establishes a grievance procedure for resolving employment disputes consistent with the provisions of the collective bargaining agreement.

11

However, this court notes that the existence of a grievance procedure, including arbitration, does not necessarily mean that a state law claim in preempted under § 301.  See Lingle, 486 U.S. at 411-13.

Article XII, Section 1(b), addressed the company's obligations regarding safety issues and provides, in pertinent part:

> The Company will continue to make reasonable provisions for the health and safety of its employees during the course of their employment and will comply with all applicable State and Federal health and safety regulations or codes, and such regulations or codes shall represent the minimum acceptable standards.  The Company will provide competent first aid personnel.  The Company and the Union will cooperate in maintaining safe and healthful working condition.  Management representatives and employees will observe Company health and safety rules and will cooperate in the prevention of accidents and injuries.

Section 1(b)(1) establishes a health and safety committee made up of union and company representatives "for the promotion of safe working practices and sanitary and healthful working conditions."  The committee's activities include entering the plant to investigate health and safety conditions, meeting at least once a month to discuss health, safety, and sanitation problems, and making health and safety recommendations.  On its part, the company agreed to consider the committee's recommendations. Regarding hazardous materials, Article XII, Section 1(b)(4) of the 1970 collective bargaining agreement provides that the Company will "designate any recognized hazardous materials used in the manufacturing process and will establish procedures for its safe

12

use," and that "[w]here tests or physical examinations of employees are required in connection with the use of hazardous materials and such tests or examinations show abnormal results, the employees so tested or examined shall be advised of the results."

The Memorandum of Agreement included as part of the 1970 collective bargaining agreement established a Joint Occupational Health Program whereby Firestone and the unions agreed to establish an Occupational Research Study Group at a school such as Johns Hopkins University School of Public Health to undertake an epidemiological study of employees and to appoint representatives to an Occupational Health Committee. The functions of the Occupational Health Committee included, among other things, recommending "procedures for the early identification and detection of potentially toxic and hazardous agents and their use" in the plants. The functions of the Occupational Research Study Group included conducting an epidemiological study into potential environmental health problems, assisting the Company in developing safe standards for occupational environments, and assisting in developing environmental controls of (1) new chemicals and processes introduced in the company's operations, (2) chemicals and dusts of already recognized toxicity, and (3) other working conditions as appropriate. The Memorandum of Agreement also stated as follows:

> The Company retains the sole discretion to determine what action, if any, it should take regarding the recommendations and/or findings of the Occupational Research Study Group and the Occupational Health Committee. The Company's failure to act on the recommendations and/or findings shall not constitute a breach of this or any other Agreement between the parties.

13

This court notes that this language from the Memorandum of Agreement expressly confirms that any action undertaken by Firestone as a result of that Agreement was purely voluntary and Firestone incurred no legal obligations as a result.

The Firestone Defendants argue that, taken together, the Health and Safety Committee provisions of the various agreements in effect over the years, coupled with the Joint Occupational Program provisions of the 1970 collective bargaining agreement, show that Plaintiffs' claims directly relate to, and are inextricably intertwined, with the terms of the collective bargaining agreements. The Firestone Defendants contend that the material fact that Firestone allegedly concealed (in the fraudulent concealment claim) and the material statement that Firestone allegedly made (in the intentional misrepresentation claim) both arise from the knowledge that Firestone gained by virtue of the health and safety programs and research study groups established by the collective bargaining agreements. This court does not agree with the Firestone Defendants' arguments. Following its careful review of the relevant provisions of the collective bargaining agreements, this court concludes that they are general in nature and are not the basis of Plaintiffs' claims. This court specifically concludes that the fact that the Firestone Defendants could have or may have acquired knowledge as a result of the safety programs and studies established or facilitated by the collective bargaining agreements does not mean that those programs or studies were the sole source of that knowledge, or more importantly, that the rights that Plaintiffs are asserting in their claims arose from the collective bargaining agreements.

In Lingle, the Supreme Court held that "an application of state law is pre-empted by § 301 . . . only if such application requires the interpretation of a collective-bargaining agreement." Lingle, 486 U.S. at 413. In so holding, the Court stated that "even if dispute resolution pursuant to

a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." Lingle, 486 U.S. at 409-10; see also Evans, 884 F. Supp. at 1213. Therefore, the "mere fact that the state-law analysis might require the state court to focus on the same facts that would control resolution of an employee's contractual remedy is not enough to require preemption of the state-law claim." Bettis, 878 F.2d at 196, citing Lingle, 486 U.S. at 409-10. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Loewen Group, 65 F.3d at 1421, quoting Livadas v. Bradshaw, 512 U.S. 107, 124 (1994). The Seventh Circuit has stated that "when the collective bargaining agreement is merely a tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely pro forma, we can say with confidence that such consultation does not trigger § 301 preemption." Loewen Group, 65 F.3d at 1422. This court's focus must be on whether the state tort claims raised here confer nonnegotiable state-law rights on employees independent of any right established by contract, or, instead, whether evaluation of the tort claims is inextricably intertwined with consideration of the terms of the labor contract. See Evans, 884 F. Supp. at 1214, citing Allis-Chalmers Corp., 471 U.S. at 213; see also Loewen Group, 65 F.3d at 1421-22.

This court concludes that state law claims raised here are independent of any rights established by the collective bargaining agreements and that evaluation of the elements of the state law claims alleged in this case are not inextricably intertwined with consideration of the terms of

the collective bargaining agreements. After careful consideration, this court concludes that the elements of Plaintiffs' state law claims can be evaluated without interpreting the collective bargaining agreements. See Bettis, 878 F.2d at 197; see also Loewen Group, 65 F.3d at 1422 (no resort to the collective bargaining agreement required where the elements merely require an inquiry into the behavior of the parties).

This court further concludes that the Medlen case so heavily relied upon by the Firestone Defendants does not require a contrary determination and is factually distinguishable from this case. In Medlen, the plaintiff was shot by a co-worker at his workplace. The plaintiff and his wife sued and alleged two intentional torts against his employer: (1) that the employer had knowledge that the co-worker threatened or posed physical harm to other employees and was aware this harm was substantially certain to occur, but required the plaintiff to work at the plant; and (2) that the employer had knowledge that failure to provide adequate security to prevent weapons from entering the plant would create a dangerous condition within the plant, and yet required the plaintiff to work in the plant while exposed to this dangerous condition. Medlen, 2005 WL 3307313, at *2. The employer argued that both claims were preempted by § 301. The district court concluded that the first claim did not implicate a specific section of the collective bargaining agreement and was not preempted, noting that this claim was governed by the general duty of an employer to provide a safe workplace under Ohio law. Medlen, 2005 WL 3307313, at *3. However, the district court concluded that the second claim was preempted under § 301 because a determination "whether the safety measures in place on the day of the shooting were adequate or inadequate requires interpretation of the appropriate level of safety the [collective bargaining agreement] requires the Joint Safety Committee to meet." Medlen, 2005 WL 3307313, at *3.

16

First of all, the decision of the district court of the Northern District of Ohio in <u>Medlen</u> is persuasive authority at best. Most importantly, however, this court concludes that the case is not factually analogous to this case. In <u>Medlen</u>, Plaintiffs alleged that the safety measures in place were inadequate, which the court determined required an interpretation of the collective bargaining agreement. In contrast, the issue raised by Plaintiffs' Complaint in this case is whether the Firestone Defendants intentionally concealed or misrepresented the dangers of benzene exposure, not whether the safety measures set out by the provisions of the collective bargaining agreements were inadequate. In fact, it would be possible to conclude that the claims raised in this case are more similar to the first claim raised in <u>Medlen</u>, the claim the district court found was not preempted.

The Firestone Defendants have also argued that removal is proper based upon the <u>Grable</u> doctrine which provides that federal question jurisdiction exists where state law claims turn on substantial questions of federal law such that they warrant resorting to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues. <u>Grable</u>, 545 U.S. at 312. The Firestone Defendants contend that federal issues are embedded in and necessary to Plaintiffs' state law claims. Defendants argue that these federal issues pertain to the rights conferred under the collective bargaining agreements and alleged violations of federal safety standards (referring to Plaintiffs' allegation in Paragraph 87 of their Complaint that studies have shown that certain levels of benzene exceed OSHA standards). Again, this court does not agree.

There can be no doubt that the category of cases that will support the type of jurisdiction discussed in <u>Grable</u> "is narrow and the situations involved are unusual." <u>Bennett</u>, 2006 WL 1987821, at *2. Where there are state law causes of action, as is the case here, the test for federal-question jurisdiction is: "does a state law claim necessarily raise a stated federal issue, actually

17

disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314; Samuel Trading, LLC, 420 F. Supp. at 889.

This court agrees with Plaintiffs that the Firestone Defendants have not adequately shown that this case fits into this narrow class of federal jurisdiction. The "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. Samuel Trading, LLC, 420 F. Supp. 2d at 891, quoting Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813 (1986). Removal is not proper if the dispute over federal law is "insubstantial." Samuel Trading, LLC, 420 F. Supp. 2d at 891. A federal issue in a state law claim is substantial only if the plaintiffs' right to relief "necessarily turns on some construction of federal law." Samuel Trading, LLC, 420 F. Supp. 2d at 891, quoting Franchise Tax Bd., 463 U.S. at 9. If a claim can be supported independently by both state and federal law theories, federal jurisdiction does not exist because federal law is not a necessary element of the claim. Samuel Trading, LLC, 420 F. Supp. 2d at 891. While a discussion of portions of the collective bargaining agreements and a reference to OSHA standards is included in Plaintiffs' Complaint as part of their discussion of the Firestone Defendants' knowledge of the dangers of benzene exposure, this court concludes that interpretation of federal law regarding the collective bargaining agreements and OSHA standards is not necessary to establish an element of any of Plaintiffs' state law claims of fraudulent concealment, intentional misrepresentation or battery. See Samuel Trading, LLC, 420 F. Supp. 2d at 891.

In this case, this court concludes that Plaintiffs' claims are based solely on state law and do not turn on "substantial questions of federal law." Cf. Bennett, 2006 WL 1987821, at *1-2 (district court determined preemption appropriate under Grable over case arising out of aircraft accident

because of the federal issues embedded in and necessary to the plaintiffs' state-law claims, which specifically referred to federal regulations and requirements set forth by the Federal Aviation Administration). Accordingly, this court concludes that removal based upon <u>Grable</u> is not warranted here.

For all of the reasons stated, this court concludes that Plaintiffs' state law claims are not preempted under § 301 of the LMRA, and this court lacks subject matter jurisdiction over Plaintiffs' Complaint. Plaintiffs' case must therefore be remanded to the circuit court of Macon County.

This court notes that Plaintiffs have requested their attorney fees incurred in seeking remand pursuant to 28 U.S.C. § 1447(c). Defendants have not responded to this request. However, the Supreme Court has stated that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 126 S. Ct. 704, 711 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." <u>Martin</u>, 126 S. Ct. at 711. While this court has ultimately disagreed with the Firestone Defendants' arguments, it was a close question and the arguments clearly were not frivolous. Accordingly, this court concludes that the Firestone Defendants did not lack an objectively reasonable basis for seeking removal. In addition, this court does not find unusual circumstances in this case and concludes that an award of attorney fees is not warranted here. See <u>Orbitz, LLC</u>, 425 F. Supp. 2d at 933.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiffs' Motion to Remand Case to the Circuit Court of Macon County, Illinois (#29) is GRANTED as to Plaintiffs' request for remand and DENIED as to Plaintiffs' request for attorney fees and costs.

(2) This case is remanded to the circuit court of Macon County, Illinois.

(3) This case is terminated.

ENTERED this 18th day of December, 2006

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE